IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY M., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:17-CV-2871-G-BK |
| | § | |
| NANCY BERRYHILL, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| DEFENDANT. | § | |

FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, before the Court for recommended

disposition are the parties' cross-motions for summary judgment.  Doc. 14; Doc. 15.  After

careful consideration of the motions and for the reasons stated herein, Plaintiff's *Motion for*

*Summary Judgment*, Doc. 14, should be **GRANTED**, Defendant's *Motion for Summary*

*Judgment*, Doc. 15, should be **DENIED**, the Commissioner's decision should be **REVERSED**,

and the case should be **REMANDED** for further proceedings.

I.    BACKGROUND

A.  Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his

application for supplemental security income ("SSI") under the Social Security Act ("the Act").

Doc. 1 at 1.  Plaintiff filed for benefits on December 3, 2014, claiming that he became disabled

in August 2011.[1]  Doc. 11-1 at 104.  Plaintiff's claims were denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. §405(g).  Doc. 11-1 at 6-11; Doc. 11-1 at 15-30.

**B. Factual Background**

Plaintiff was 40 years old when he filed his SSI application, had completed two years of college, and had past relevant work as the manager of a wrecking service.  Doc. 11-1 at 47, 61; Doc. 11-1 at 86; Doc. 11-1 at 285.

In terms of his medical history, Plaintiff underwent a left total hip replacement in May 2012 due to avascular necrosis of the left hip with chronic left hip pain.[2]  Doc. 11-1 at 520-22. In October 2012, Plaintiff underwent a second procedure due to mechanical failure following the prior surgery, which had resulted in "significant discomfort" that was resistant to conservative measures.  Doc. 11-1 at 482-83.  In March 2013, Plaintiff presented to orthopedist Dr. Al Mollabashy, M.D., who noted that Plaintiff continued to have left hip pain, which woke him up at night, and had an antalgic gait even while using an assistive device.  Doc. 11-1 at 370-71.  In October 2014, Dr. Gary Graham, M.D., noted that Plaintiff walked with a cane.  Doc. 11-1 at 651.

---

[1] Because SSI applications are not retroactive, the period under consideration for this case runs from December 3, 2014 through the date of the administrative law judge's ("ALJ") decision on May 3, 2017.  20 C.F.R. § 416.335.  Nevertheless, the Court will provide some ancillary information regarding Plaintiff's medical issues for context.

[2] Avascular necrosis is a disease caused by reduced blood flow to bones in the joints, which causes the bone to break down faster than the body can make enough new bone and may cause the bone to die.  https://medlineplus.gov/osteonecrosis.html (last visited Feb. 7, 2019).

Commencing in September 2012, Plaintiff began seeing Dr. Lee Brock, M.D., a pain management specialist, due to a severe onset of pain in his left hip worsened by a fall earlier that year. Doc. 11-1 at 732, 737. Plaintiff generally rated his hip pain as seven on a one to ten scale, the area was tender to palpation, and movement caused pain. Doc. 11-1 at 706, 710; Doc. 11-2 at 275; Doc. 11-2 at 978, 980, 988, 990-91. He had consulted with another surgeon regarding possible surgical revision but was unable to afford it. Doc. 11-1 at 706. In July 2015, Dr. Brock assessed Plaintiff as having chronic pain syndrome and chronic sacroiliac joint dysfunction. Doc. 11-2 at 258. Treatment records of Dr. Brock, dating through February 2017, indicate that Plaintiff's condition steadily deteriorated over time. Specifically, he walked with an antalgic gait, his hip was tender to palpation, he was taking multiple prescription medications, and he had started to use a cane. Doc. 11-1 at 686-87, 695, 703, 717, 724, 726, 729; Doc. 11-2 at 253, 255, 257-58, 261, 264, 266, 268, 270, 274, 276, 278, 280; Doc. 11-2 at 979, 981; Doc. 11-2 at 992. At times, Plaintiff also complained that his pain medications were not working well enough. *See* Doc. 11-2 at 271, 277. In October 2016, Dr. Brock responded to a musculoskeletal impairment interrogatory, stating that Plaintiff had a problem with at least one major peripheral weight-bearing joint, which resulted in his inability to ambulate effectively. Doc. 11-2 at 977. The definition of "effective ambulation," as used by the Commissioner and set forth *infra*, was included in the interrogatory. Doc. 11-2 at 977.

### C. The ALJ's Findings

The ALJ found that Plaintiff has the severe impairments of "reconstructive surgery on weight bearing joint (left hip replacement), avascular necrosis, osteoarthritis and allied disorders, hemorrhaging of the gastrointestinal tract, hiatal hernia, and GERD," but did not have an impairment or combination of impairments that met or medically equaled a Listing. Doc. 11-1 at

3

20, 22.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to lift/carry/pull 20 pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and walk/stand for five hours in a workday, together with additional postural limitations.  Doc. 11-1 at 23.  The ALJ concluded that while Plaintiff could not perform his past relevant work, he could perform other jobs available in the national economy.  Doc. 11-1 at 28-29.

## II.    APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

## III.    DISCUSSION

While Plaintiff raises three issues on appeal, the Court need only address one because it is outcome determinative.  In particular, Plaintiff argues that his hip condition satisfies the requirements for presumptive disability set forth in the regulations because he is unable to ambulate effectively as evidenced by: (1) his testimony that he needs to use crutches 40 percent of the time and a cane 60 percent of the time, he needs crutches to walk a block, and he can only use a cane to walk shorter distances, Doc. 14 at 11-12; and (2) Dr. Brock's opinion that Plaintiff is unable to ambulate effectively.  Doc. 14 at 10-11.  Further, Plaintiff asserts that the ALJ never evaluated whether he could walk at a reasonable pace on rough or uneven surfaces as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1. Section 1.00(B)(2)(b).  Doc. 14 at 12-13.

Defendant responds that the ALJ did assess Plaintiff's ability to ambulate effectively insofar as the ALJ noted that although Plaintiff "uses a cane or crutches to ambulate, he remains able to do so without assistance." Doc. 15 at 7.  Defendant further asserts that Plaintiff shops for groceries, cooks, and carries out his activities of daily living and, according to his own testimony, can walk effectively with a cane or crutches.  Doc. 15 at 7.  Defendant also argues that although Plaintiff testified that it took him 30 minutes to walk around the block, there is no medical evidence to substantiate either that allegation or his need to use crutches during the period of disability under review.  Doc. 15 at 7.  Finally, Defendant argues that no treating medical source documented Plaintiff's use of a cane until November 2014.[3]  Doc. 15 at 7.

In reply, Plaintiff contends that the Commissioner has defined effective ambulation

---

[3] This argument is baseless and will not be discussed further because Plaintiff's period of disability commenced in December 2014 for purposes of this Court's review.  *See supra* at n. 1.

as the ability to sustain a reasonable walking pace over a sufficient distance to be able to

carry out activities of daily living.  Doc. 16 at 4.  Further, Plaintiff notes that examples of
ineffective ambulation set forth in the regulation include the inability to walk without the use of a
walker, two crutches, or two canes; and the inability to walk a block at a reasonable pace on

rough or uneven surfaces, which Plaintiff cannot do as opined by his treating specialist.  Doc. 16

at 5-6.

      As relevant here, Section 1.00(B)(1)(a) provides that "Regardless of the cause(s) of a

musculoskeletal impairment, functional loss for purposes of these listings is defined as the

inability to ambulate effectively on a sustained basis for any reason."  20 C.F.R. Pt. 404, Subpt.

P, App. 1. Section 1.00(B)(1)(a).  Section 1.00(B)(2)(b) provides that:

> (1) [ ] Inability to ambulate effectively means an extreme limitation of the ability
> to walk; i.e., an impairment(s) that interferes very seriously with the individual's
> ability to independently initiate, sustain, or complete activities.   Ineffective
> ambulation is defined generally as having insufficient lower extremity functioning
> . . . to permit independent ambulation without the use of a hand-held assistive
> device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable
> walking pace over a sufficient distance to be able to carry out activities of daily
> living. They must have the ability to travel without companion assistance to and
> from a place of employment or school.   Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk without the use of
> a walker, two crutches or two canes, the inability to walk a block at a reasonable
> pace on rough or uneven surfaces . . . [and] the inability to carry out routine
> ambulatory activities, such as shopping and banking . . . The ability to walk
> independently about one's home without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Section 1.00(B)(2)(b).

      As an initial matter, the Court notes that the ALJ mischaracterized Plaintiff's testimony in

certain respects.  For example, the ALJ stated that Plaintiff "remains able to walk, per his

testimony[,] more than sixty percent of the day with a single cane, and can walk a block using his

cane."  Doc. 11-1 at 22.  Plaintiff testified that when he did walk, he used his cane 60 percent of

the time – he did not testify that he walked with a cane more than 60 percent of the day.  Indeed, Plaintiff testified that he spent 90 percent of his day lying in bed with a brace to keep his hip stable.  Doc. 11-1 at 58.  Further, Plaintiff did not testify that he could walk a block using his cane – rather, he stated that he needed crutches to walk a block and used a cane for shorter distances.  Doc. 11-1 at 72.

The ALJ also incorrectly stated that Plaintiff was able to "independently initiate, sustain and complete his activities of daily living," including grocery shopping, maintaining his living space, and cooking.  Doc. 11-1 at 22.  Again, that is not what the evidence of record reveals. While Plaintiff testified that he could go to the grocery store, he stated that he could not drive and did not go to the store alone.  Doc. 11-1 at 43, 59.  Additionally, there is no record evidence suggesting that Plaintiff can cook other than using a microwave oven.  Doc. 11-1 at 59.  Indeed, Plaintiff reported that he could not stand over a stove to prepare meals.  Doc. 11-1 at 296.  The ALJ also did not provide a record cite in support of his statement that Plaintiff could independently maintain his living space and complete other "activities of daily living," and the Court could find no such evidence in the record.

Even putting aside these issues, the Court finds that substantial evidence does not support the ALJ's decision that Plaintiff can ambulate effectively.  As noted above, the evidence of record indicates that Plaintiff is unable to sustain a reasonable walking pace over a sufficient distance to be able to carry out his activities of daily living.  Plaintiff testified that if he has to walk one block or longer, he needs to use crutches, and it would take him 30 minutes to walk around an entire block.  Doc. 11-1 at 58; Doc. 11-1 at 72, 75.  The ALJ, however, never assessed Plaintiff's ability to walk a block at a reasonable pace on "rough or uneven surfaces" despite Plaintiff's testimony that he needs to use crutches when he leaves home because they are more

8

stable than his cane.  Doc. 11-1 at 52.  Further, Plaintiff testified that he is not able to travel

outside the home without companion assistance and crutches for "routine ambulatory activities"

such as grocery shopping, and the ALJ did not accurately cite any evidence to the contrary.

Finally, Plaintiff testified that he uses a cane to get around his home even though that is not

required to constitute ineffective ambulation.  Doc. 11-1 at 52-53; 20 C.F.R. Pt. 404, Subpt. P,

App. 1. Section 1.00(B)(2)(b).  In sum, the ALJ failed to adequately consider (1) whether

Plaintiff's limited walking ability satisfies the requirements for ineffective ambulation set forth

by the Commissioner; and (2) whether such ineffective ambulation would satisfy the

requirements of a listed impairment.  This is particularly problematic given that Plaintiff's long-

time treating specialist, Dr. Brock, reviewed the Commissioner's definition of "ineffective

ambulation" and determined that Plaintiff cannot ambulate effectively.[4]

---

[4] Because the Court finds that the ALJ did not adequately assess Plaintiff's ability to ambulate
effectively, the Court need not address Plaintiff's additional argument that the ALJ failed to
properly assess Dr. Brock's opinion.  Although that argument does appear to have some merit,
Plaintiff may re-urge the issue on remand.  *See* 20 C.F.R. § 404.983 (providing that when a case
is remanded from federal court, the ALJ may consider any issues relating to the claim).  For the
same reason, Plaintiff's argument that the ALJ violated Stone *Stone v. Heckler*, 752 F.2d 1099,
1101 (5th Cir. 1985), by finding several of his impairments "non-severe" also need not be
addressed by the Court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 14, should be

**GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 15, should be **DENIED**, the

Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for

further proceedings.

**SO RECOMMENDED** on February 11, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds, 28 U.S.C. § 636(b)(1)* (extending the time to file objections from ten to fourteen days).